### UNDERWOOD and others *v.* DUGAN and others.

*(Circuit Court, N. D. Texas. 1885.)*

EQUITY—LACHES—TITLE UNDER FRAUDULENT TRANSFER OF LAND CERTIFICATE —TRUST.
    The delay on the part of complainants in asserting their alleged claim to the lands in controversy in this case *held* fatal to their prayer for relief.

In Equity.

McCORMICK, J. It appears from the pleadings and proof in this case that Finess Roberson (whose name is spelled with some variations, rendered immaterial by the proof) on the first of March, 1838, obtained from the proper authority in Texas a certificate for one league and one labor of land; that on the fifth day of March, 1838, he conveyed this certificate, by transfer written on the back thereof,

to Warner L. Underwood. A separate instrument made same day limited Warner L. Underwood's title to a part, and made him trustee for others as to the other part, not material to the issues in this case. Soon after this transaction Roberson removed to Arkansas, and Underwood returned to Kentucky, and the next appearance of the certificate is in 1852–53, in the office of the district surveyor of Grayson county, in which county it appears to have been located, and the location forfeited by failure to return the field-notes of the survey to the land-office by thirty-first August, 1853. On the twelfth May, 1855, Finess Roberson, in Sevier county, Arkansas, conveyed by separate writing said certificate to Dennis Trammel, and on the twenty-third of June, 1855, Dennis Trammel conveyed the certificate to S. W. March for valuable and adequate consideration. At that time the transfer to Underwood, which had been written on the back of the certificate, was completely covered and hidden by a piece of brown paper, just the size of the certificate, pasted on the back of the certificate; and the proof abundantly shows that S. W. March had no actual knowledge or notice of the transfer to Underwood. On the eighth of August, 1855, a patent issued to said March as the assignee of said certificate for the land in controversy. March claimed the land, paid taxes upon it, and about 1872 commenced placing tenants upon it under written leases, embracing specified parts of it, and a few years later built a dwelling-house upon it for his own residence, but died on the twenty-ninth day of July, 1878, before he had removed his residence to this land. Before the institution of this suit much of the land was in cultivation, and more of it inclosed for pasture, many wells dug and tenant houses erected on the land, and extensive and valuable improvements made thereon, rendering the tract very valuable.

The defendants hold March's title. The complainants hold Underwood's title. Underwood died in February, 1872. This suit was filed June 13, 1881. The defendants, besides other pleas, urge that "the complainants' demand, if any they have, is stale, and in a court of equity ought not to be heard." This the bill attempts to avoid by charging fraud on the part of March in procuring the Roberson certificate and concealing the transfer to Underwood, but this charge finds no support in the proof, and is fully met by the answer and the defendants' proof. It is also set out in the bill, in explanation of the delay, that shortly after the purchase of the Roberson certificate by Underwood "said Underwood went from Texas with his family to the state of Kentucky, intending soon to return to Texas, but that business, ill-health, and other causes delayed and prevented his return; * * * that by reason of his long and unanticipated absence, the disturbed conditions of the country, his ill-health, and the bad faith and frauds of persons who found access to his papers, they were misplaced, lost, abstracted, and destroyed."

The proof shows that soon after the purchase of said certificate by

Underwood, said Underwood's father died in Kentucky leaving a large estate somewhat involved in complications; that Underwood was a good lawyer and business man, and was engrossed with the business of said estate. It is probably within the judicial knowledge of the court that public affairs and public land matters were in an unsettled condition in Texas for nearly 10 years after 1838; and, again from the twenty-eighth of January, 1861, to the thirtieth day of March, 1870, were so disturbed as to prevent the running of statutes of limitation.

It is further shown by the proof that for several years, at least two or three years, before his death said Underwood's mental condition was such as disabled him from giving due care to his business affairs. The bill admits that in May, 1860, Underwood received information as to the condition of the certificate and the issuance of the patent, and the proof shows that his agent in Texas had ascertained the facts the previous winter. While the condition of the country was disturbed as above stated, yet from 1838 to the institution of this suit, a period of 43 years, the general land-office of the state and courts of the state were constantly open. Thousands of toiling honest citizens were in good faith acquiring titles to land, and redeeming them from their savage state, and expelling the savage occupiers.

More than 25 years before the institution of this suit, March paid $1,000 in gold for this certificate, without any notice of the transfer to Underwood, and had the certificate located on good land, and followed up his location and procured the patent to himself on the chain of transfer submitted to the proper public officer, who decided that he was entitled to so receive it as assignee of Roberson. The proof in this case shows the transfer to Trammel to be genuine, and the transfer from Trammel to March is not questioned; and if Trammel was guilty of any fraud in connection with it, the proof not only does not implicate March in it, but strongly negatives such an implication. Now, when Roberson and Underwood and Trammel and March are all dead, and the transactions of 1838 faded from the memories of the few who may survive, more than 25 years since March acquired in good faith and for full value the legal title to the land, of which Underwood might have obtained knowledge then, and of which he did have actual knowledge more than 20 years before the bringing of this suit, during all of which years Underwood and the complainants have been resting quietly, and letting March and the defendants put their money and labor and skill into this land, the complainants come and pray "that the patent to S. W. March be declared to have been issued to said S. W. March and held by him, and all the defendants herein holding under him or through him, in trust for complainants."

In my opinion the complainants have waited too long, and their prayer in a court of equity cannot be granted, and the bill should be dismissed at complainants' costs; and it will be so ordered.